UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROY ALLEN COOK,

    Plaintiff,

    v.

NICOLE BRIDEGROOM *et al.*,

    Defendants.

CAUSE NO. 3:23-CV-104-DRL-JPK

OPINION AND ORDER

Roy Allen Cook, a prisoner without a lawyer, filed a second amended complaint under 42 U.S.C. § 1983.[1] (ECF 18.) Under 28 U.S.C. § 1915A, the court must screen the amended complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Cook lacks counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Cook is an inmate at Putnamville Correctional Facility. His claims stem from events occurring when he was incarcerated at Westville Correctional Facility. He claims that on December 31, 2022, he was beaten by another inmate and his jaw seriously injured.

---

[1] His two earlier pleadings were not on the right form and contained unrelated claims against unrelated defendants. He has now corrected these deficiencies.

He went to the prison's urgent care and was seen by Nurse Paula Rogers. He claims Nurse Rogers did not allow him to see the on-call doctor and also wrote down in his medical records that she gave him Toradol, a strong pain medication, when in fact she only gave him Tylenol. He claims that he was in obvious distress with a serious injury, but she allegedly ignored his need for emergency medical care and sent him to his cell.

Approximately eight hours later, he returned to urgent care because he was in severe pain and could not eat or drink anything. He was evaluated by Nurse Kelly Barlow, who contacted Dr. Andrew Liaw about his injury. The doctor allegedly instructed that he should be returned to his cell and an x-ray of his jaw scheduled for Monday, January 2, 2023. Nurse Barlow gave him two "liquid diet" meals and sent him back to his cell, though he explained to her that he could not open his mouth to eat or drink anything. She also allegedly noted in his medical records that he was observed "sitting on the bench outside urgent care talking with other offenders without difficulty," which he claims was false.

The x-ray ordered for January 2, 2023 did not occur for unknown reasons, but he underwent an x-ray the following day. The x-ray confirmed that his jaw was broken in two places. He was immediately taken to an outside hospital for medical treatment, which included treatment to address dehydration caused by him not eating or drinking for four days. He later underwent surgery to repair his broken jaw, but he claims the delay in treatment resulted in permanent injury, including pain, numbness, earaches, and difficulty eating.

2

Based on these events, he seeks monetary damages from Dr. Liaw, Nurse Rogers, and Nurse Barlow, as well as their employer Centurion Health. He also sues Health Services Administrator Nichole Bridegroom, who was allegedly aware of his injury during the days he was waiting for an x-ray but did nothing to help him.

Inmates are entitled to constitutionally adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and quotations omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted).

3

Giving Mr. Cook the inferences to which he is entitled at this stage, he has alleged that he had a serious medical need when he broke his jaw. On the subjective prong, he alleges that Nurse Rogers did not conduct a proper evaluation of him in the urgent care or contact the doctor about his symptoms, though he had an obvious injury that ultimately required surgery to correct. Likewise, he alleges that Dr. Liaw failed to provide him with any medical treatment and instead instructed the nurse to have him return to his cell until an x-ray could be conducted in a few days. His allegations against Ms. Bridegroom are less detailed, but he alleges that she was aware he had a severely injured jaw and waited four days to get treatment, but allegedly did nothing to help him obtain medical care. He further claims he ultimately underwent surgery to correct the jaw injury but has permanent damage as a result of the delay in treatment. He has alleged a plausible Eighth Amendment claim against these defendants.

Nurse Barlow presents more difficulty, as it is evident from his allegations that she contacted the doctor to seek his instructions, and that it was the doctor who made the decision that he could wait for an x-ray. Ordinarily a nurse cannot be held liable for following a doctor's instructions. *Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (no liability for prison nurse who "wrote down [the plaintiff's] symptoms, checked his vitals, relayed necessary information to [the doctor], and performed her assigned duties."); *Reck v. Wexford Health Sources*, Inc., 27 F.4th 473, 485 (7th Cir. 2022) ("As a general matter, a nurse can, and indeed must, defer to a treating physician's instructions."). In certain limited circumstances, a nurse may be held liable for "blind or unthinking" adherence to a doctor's orders where an inmate is obviously being

4

mistreated. *Reck*, 27 F.4th at 485. Giving Mr. Cook all favorable inferences, the amended complaint can be read to allege such a claim against Nurse Barlow. He claims that the doctor did not personally examine him and instead relied on Nurse Barlow's account. He claims she falsely downplayed his symptoms, though it would have been evident to her that he was seriously injured. She then sent him back to his cell with a few "liquid diet" meals, though he told her could not eat or drink anything, and he ultimately had to receive treatment for dehydration at an outside hospital. He will be permitted to proceed past the pleading stage against Nurse Barlow.

Finally, he sues Centurion Health, the private company that employs medical staff at Indiana prisons. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Centurion Health cannot be held liable solely because it employs the medical professionals involved in Mr. Cook's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can be held liable to the same extent as a government actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). Under *Monell*, municipal entities or private companies performing a government function "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The official policy requirement is meant "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually

responsible." *Id.* (citations, quotations, and emphasis omitted). To succeed on a widespread practice theory, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "At the pleading stage . . . a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id.*

Mr. Cook does not allege the existence of an official policy, nor does he describe events plausibly suggesting a widespread practice by Centurion Health that caused his injury. Instead, his complaint describes wrongdoing by a few individuals in the medical unit, which cannot form the basis for a *Monell* claim. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021); *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). This corporate defendant will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Nicole Bridegroom, Paula Rogers, Kelly Barlow, and Andrew Liaw in their personal capacity for monetary damages for failing to provide adequate medical care for his broken jaw in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Centurion Health as a defendant;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nicole Bridegroom, Paula Rogers, Kelly Barlow, and Andrew Liaw at Centurion Health

and to send them a copy of this order and the second amended complaint (ECF 18) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Nicole Bridegroom, Paula Rogers, Kelly Barlow, and Andrew Liaw to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

September 13, 2023                         *s/ Damon R. Leichty*
                                            Judge, United States District Court