UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY ALLEN COOK, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-104 DRL |
| NICOLE BRIDEGROOM *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Roy Allen Cook, a prisoner without a lawyer, is proceeding in this case "against Nicole Bridegroom, Paula Rogers, Kelly Barlow, and Andrew Liaw in their personal capacity for monetary damages for failing to provide adequate medical care for his broken jaw in violation of the Eighth Amendment." ECF 19 at 6. Mr. Cook filed a summary judgment motion. ECF 58. The defendants filed a response. ECF 65. Mr. Cook has not filed a reply, and the time for doing so has expired. The defendants filed a cross-motion for summary judgment. ECF 60. With the motion, the defendants provided Mr. Cook the notice required by N.D. Ind. L.R. 56-1(f), which informed Mr. Cook he needed to file (1) a response brief and (2) a Response to Statement of Material Facts within 28 days. ECF 63. The court extended Mr. Cook's deadline to file a summary judgment response, but that deadline has passed, and Mr. Cook still has not filed any response. Therefore, the court will now rule on both summary judgment motions.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard does not change when parties file cross-motions for summary judgment. *International Brotherhood of Electrical Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). "When considering the plaintiffs' motion for summary judgment, the court must consider the evidence in the light reasonably most favorable to the defendants, and vice versa." *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 818 (S. D. Ind. 2000); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) ("With crossmotions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.") (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*,

2

511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

3

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When the defendant has provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The defendants argue summary judgment is warranted in their favor because they were not deliberately indifferent to Mr. Cook's serious medical need. Each defendant will be addressed in turn.

    A.  *Nurse Rogers.*

Nurse Rogers provides an affidavit. During all relevant times, she was employed at Westville Correctional Facility (WCF) as a licensed practical nurse. ECF 61-1 at 1. On December 31, 2022, around 4:45 a.m., Mr. Cook presented to the nursing urgent care desk reporting he had fallen in the shower and may have broken his jaw. *Id.* at 2. Mr. Cook communicated he was missing his bottom-right tooth, could barely open his mouth, and felt like he could not swallow or eat, but Nurse Rogers noted his mouth was not bleeding and he was able to communicate his injury and its cause without assistance. *Id.* Nurse

4

Rogers took Mr. Cook's vital signs, which did not indicate that he was in acute distress or needed any emergency medical intervention. *Id.* No medical provider was present in the prison at the time. *Id.* at 3.

Because Mr. Cook's vital signs and reported injury did not indicate a need for emergency treatment, and he was able to communicate on his own, Nurse Rogers did not call 911 or the on-call provider. *Id.* at 2-3. Instead, Nurse Rogers provided Mr. Cook with Tylenol for his pain and an ice pack to apply to his jaw and scheduled him to come back later in the morning to be seen by a registered nurse. *Id.* at 3. Nurse Rogers wanted Mr. Cook to be seen by a higher level of nurse than herself to further investigate his injury because a registered nurse has more education and training and can perform a more detailed assessment than a licensed practical nurse. *Id.* Later that morning, Mr. Cook was seen by Nurse Barlow, a registered nurse. *Id.* Because Mr. Cook doesn't dispute any of these facts, the court accepts them as undisputed.

Nurse Rogers argues she was not deliberately indifferent to Mr. Cook's medical need because she exercised her professional judgment to provide him appropriate care for his complaints and to conclude he did not require emergency medical intervention. Here, it's undisputed Nurse Rogers treated Mr. Cook's complaints by taking his vital signs, providing him Tylenol and an ice pack, and scheduling him to see a higher level nurse a few hours later. Because it's undisputed Nurse Rogers provided treatment for Mr. Cook's complaints, Mr. Cook can only survive summary judgment by providing evidence this treatment was "plainly inappropriate." In his summary judgment motion, Mr. Cook raises just one argument:

> Paula Rogers acted deliberately indifferent to the medical needs of the Plaintiff when she used her personal bias and opinion to downplay the severity of the injury after alleging she heard him talking to other inmates without difficulty while waiting in the Urgent Care thus resulting in the denial of reasonably adequate care when she knew he was in pain and had a possible broken jaw after her observations.

ECF 58-1 at 3.[1]

Here, there's no evidence by which any reasonable jury could conclude the treatment provided by Nurse Rogers was "plainly inappropriate." Specifically, there's no evidence Nurse Rogers violated any standard of care by taking into consideration the fact that Mr. Cook was able to communicate on his own in determining his medical complaints did not warrant emergency treatment. Moreover, while Mr. Cook states Nurse Rogers denied him "reasonably adequate care when she knew he was in pain," he doesn't argue or provide evidence that the treatment she provided—giving him Tylenol and an ice pack and scheduling him to see a registered nurse a few hours later—violated any standard of care or was in any way inappropriate. Thus, because the undisputed facts show Nurse Rogers provided Mr. Cook constitutionally adequate care for his complaints, summary judgment is warranted in her favor on this claim. *See Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (no liability for prison nurse who "wrote down [the plaintiff's] symptoms, checked his vitals, relayed necessary information to [the doctor], and performed her assigned duties.").

---

[1] It appears Mr. Cook's argument may be confusing Nurse Rogers with Nurse Barlow, as it was Nurse Barlow who recorded in Mr. Cook's medical records that she "observed Mr. Cook sitting on the bench outside of the infirmary talking with other inmates without difficulty," while Nurse Rogers did not record any such observation. *See* ECF 60-2 at 2. Nevertheless, Nurse Rogers agrees that she considered the fact that Mr. Cook was able to communicate on his own in determining he did not require emergency medical care.

B. *Nurse Barlow.*

Nurse Barlow provides an affidavit too. Nurse Barlow is a registered nurse at WCF. ECF 61-2 at 1. On December 31, 2022, around 12:00 p.m., Mr. Cook reported to Nurse Barlow for a medical visit after having previously been seen earlier by Nurse Rogers. *Id.* at 2. Mr. Cook reported to Nurse Barlow that he fell in the shower and thought he broke his jaw. *Id.* Nurse Barlow took Mr. Cook's vital signs, which did not indicate a need for emergency medical intervention. *Id.* She also assessed Mr. Cook's jaw and mouth and noted no redness or bruising to his jaw and minimal swelling. *Id.* Because Mr. Cook indicated he could not eat or drink, Nurse Barlow went to retrieve for Mr. Cook two liquid diet meal replacement drinks for the day. *Id.* Upon returning to the infirmary, Nurse Barlow observed Mr. Cook sitting on the bench outside of the infirmary and talking with other inmates without difficulty. *Id.* Nurse Barlow called Dr. Liaw and reported her observations and assessment of Mr. Cook, as well as Mr. Cook's subjective complaints. *Id.* Dr. Liaw ordered that Mr. Cook return to his cell and be scheduled for an x-ray on Monday, January 2. *Id.* Because December 31 was a Saturday and the prison's x-ray technician did not work on the weekends, Dr. Liaw could have ordered an earlier x-ray only by sending Mr. Cook to the hospital's emergency room. *Id.* Nurse Barlow did not question Dr. Liaw's orders, did not see a medical necessity to send Mr. Cook to the emergency room based on his condition, and thought it was safe for him to wait until Monday for his x-ray. *Id.* at 2-3. This was the only interaction Nurse Barlow had with Mr. Cook during the relevant time period. *Id.* at 3.

Nurse Barlow argues she is entitled to summary judgment because she adequately assessed Mr. Cook, exercised her nursing judgment in obtaining his objective condition and communicating that to the doctor, provided him with liquid meal replacements in case he had trouble eating, and followed Dr. Liaw's orders to schedule an x-ray. Here, it's undisputed Nurse Barlow treated Mr. Cook's complaints by taking his vital signs, assessing his mouth and jaw, providing him two liquid meal replacements, and reporting her observations and assessment to Dr. Liaw, who ordered that Mr. Cook receive an X-ray once the prison's x-ray technician returned. To survive summary judgment, Mr. Cook must provide evidence this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524; *Brown*, 38 F.4th at 553; *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 (7th Cir. 2022) ("As a general matter, a nurse can, and indeed must, defer to a treating physician's instructions.").

In his summary judgment motion, Mr. Cook raises one argument:

> Plaintiff was denied the basic human need of food and water when he was only given two days of a liquid diet by Kelly Barlow thus leaving him with three days the inability to eat or drink when any reasonable layperson would know that one needs food and water for more than two meals when they are unable to eat and drink due to an injury or suspected injury.

ECF 58-1 at 2. However, Mr. Cook doesn't argue or provide evidence that Nurse Barlow refused to give him adequate liquid diet. Rather, the record shows only that Nurse Barlow provided Mr. Cook with two liquid meal replacement drinks on December 31 in response to his complaint that he was not able to eat or drink, and it's undisputed she did not have any further interactions with Mr. Cook during the relevant time period. Mr. Cook argues Nurse Barlow should have given him more than two liquid meal

8

replacement drinks, but he doesn't argue or provide evidence he requested additional liquid meal replacement drinks and was denied. No reasonable jury could conclude Nurse Barlow was deliberately indifferent merely for providing Mr. Cook with two liquid meal replacement drinks on December 31, where there's no evidence Mr. Cook was prevented from obtaining additional liquid meal replacement drinks in the future. Based on the facts in the record, Mr. Cook's belief that Nurse Barlow should have provided him with additional liquid meal replacement drinks on December 31 amounts to a mere disagreement with medical professionals, which is insufficient to show a constitutional violation. *See Ciarpaglini*, 352 F.3d at 331. Therefore, because it's undisputed Nurse Barlow provided Mr. Cook with treatment for his complaints, and Mr. Cook provides no evidence this treatment violated any standard of care or was in any way inappropriate, summary judgment is warranted in favor of Nurse Barlow on this claim.

  C. *Dr. Liaw.*

  Dr. Liaw submits an affidavit. On December 31, 2022, Nurse Barlow contacted Dr. Liaw regarding Mr. Cook's complaints regarding his jaw and informed Dr. Liaw that Mr. Cook's vital signs were within normal range, he was able to communicate his medical issues without assistance, he was speaking to other inmates without difficulty, and his jaw presented with no redness or bruising and minimal swelling. ECF 61-3 at 2. Dr. Liaw concluded that Mr. Cook's reported symptoms did not indicate a need for emergency medical intervention, so he ordered that Mr. Cook return to the cell block and be scheduled for an x-ray the following Monday. *Id.* Dr. Liaw saw no medical reason to send Mr. Cook to the hospital on December 31 for an immediate x-ray because he was not

9

concerned that Mr. Cook's jaw was actually fractured, as a fall in the shower is not likely to cause a jaw fracture and he had no bruising or redness and only mild swelling. *Id.* at 2-3. On January 3, 2023, Mr. Cook had an x-ray of his jaw. *Id.* at 3. While waiting for the x-ray results, Dr. Liaw had Mr. Cook go to the medical area for a 30 mg injection of Toradol for pain. *Id.* The x-ray confirmed Mr. Cook had a jaw fracture, and Mr. Cook then admitted that an assault by another inmate had caused the injury. *Id.* Dr. Liaw consulted with the regional dental director and authorized Mr. Cook's transfer to the emergency room. *Id.* Mr. Cook was immediately transferred to the emergency room and underwent jaw surgery to repair his broken mandible. *Id.* Mr. Cook returned to WCF several days later and was admitted to the medical infirmary unit. *Id.*

Dr. Liaw argues summary judgment is warranted in his favor because he exercised his medical judgment in determining Mr. Cook's reported symptoms did not warrant sending him to the hospital on December 31. ECF 62 at 11-13. In his summary judgment motion, Mr. Cook argues Dr. Liaw was deliberately indifferent for failing to send him to the hospital immediately on December 31 and instead making him wait for several days, which caused him unnecessary pain and suffering. ECF 58 at 3.

Here, it's undisputed Dr. Liaw determined Mr. Cook did not need to be sent immediately to the emergency room on December 31 based on Nurse Barlow's report that Mr. Cook's vital signs were within normal range, he was able to communicate without assistance, he was speaking to other inmates without difficulty, his jaw showed no redness or bruising and minimal swelling, and he falsely reported the injury was caused by a fall in the shower, which Dr. Liaw concluded was unlikely to cause a jaw

10

fracture. Though in hindsight it may have been preferable to have sent Mr. Cook to the emergency room for an immediate x-ray, it's undisputed Dr. Liaw's decision to make Mr. Cook wait until the prison x-ray technician returned on Monday was an exercise of his professional judgment, and there's no evidence Dr. Liaw's decision violated any medical standard.

At the outset, it's undisputed Mr. Cook contributed to the apparent misdiagnosis of his jaw injury by falsely informing medical staff that the injury was caused by a fall in the shower, which Dr. Liaw believed was unlikely to cause a jaw fracture. Regardless, to the extent Dr. Liaw was responsible for misdiagnosing Mr. Cook's jaw injury, a misdiagnosis shows at most negligence or medical malpractice and does not by itself rise to the level of deliberate indifference. *See Williams v. O'Leary*, 55 F.3d 320 (7th Cir. 1995) (even though a medical officer's failure to administer an appropriate antibiotic fell "below the standard of care" and created a need for surgical correction, the medical officer's acts were mere negligence and did not rise to the level of deliberate indifference because the undisputed evidence showed he treated and did not ignore the condition); *Dunigan ex rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 592 (7th Cir. 1999) (because medical staff showed concern for an inmate by monitoring his condition and responding to his needs, their apparent misdiagnosis of his condition constituted mere malpractice and did not implicate constitutional concerns). The undisputed facts show Dr. Liaw showed concern for Mr. Cook's condition, as it's undisputed Dr. Liaw had valid reasons for making Mr. Cook wait a few days for his x-ray, Mr. Cook was provided Tylenol and a Toradol injection for pain relief while awaiting the x-ray results, and Dr. Liaw

11

"immediately" sent Mr. Cook to the hospital for surgery once the x-ray showed a fracture. Mr. Cook doesn't argue or provide evidence that any of the pain relief he received was inappropriate, and his belief he should have been sent to the emergency room for an immediate x-ray on December 31 amounts to a mere disagreement with medical personnel. *See Ciarpaglini*, 352 F.3d at 331 (concluding an inmate's complaint that merely disagreed with his doctor's diagnoses and treatment decisions did not state a cognizable Eighth Amendment claim); *Reed v. Indiana Dept. of Corrections*, 30 F. App'x 616, 618 (7th Cir. 2002) (concluding an inmate's argument that his physician should have prescribed him a different medication, provided surgery options, and conducted a liver biopsy was a mere "disagreement with medical personnel" and could not show deliberate indifference "even if the treatment decisions demonstrate negligence or malpractice"). Thus, no reasonable jury could conclude Dr. Liaw provided Mr. Cook with constitutionally inadequate medical care for his complaints. Summary judgment is therefore warranted in Dr. Liaw's favor.

D. *HSA Bridegroom.*

HSA Bridegroom submits an affidavit. During all relevant times, HSA Bridegroom was the Health Services Administrator at WCF. ECF 61-4 at 1. In her capacity as HSA, HSA Bridegroom did not oversee or provide day-to-day medical care to patients but rather administered the medical department within the prison, including serving as the liaison between the medical department and the prison administration. *Id.* at 2. HSA Bridegroom first became aware of Mr. Cook's injury on January 3, 2023, when she processed his paperwork authorizing his transfer to the emergency room. *Id.* HSA

12

Bridegroom had no personal knowledge of Mr. Cook's injury before that time, and there was no action she could have taken that would have expedited the treatment he received. *Id.*

HSA Bridegroom argues summary judgment is warranted in her favor because she was not personally involved in any constitutional violation, as she was unaware of Mr. Cook's medical issues until she received the paperwork to approve his transfer to the emergency room and her only involvement in this matter was to approve the paperwork. ECF 62 at 7-8. In his summary judgment motion, Mr. Cook argues HSA Bridegroom "was at all times aware of Plaintiff's injury and failed in her ability to determine that her co-workers were not acting as would be appropriate to ensure reasonably adequate medical care was received by the plaintiff therefore leaving her liable as all defendants." ECF 58-1 at 4. But Mr. Cook designates no evidence in support of his assertion that HSA Bridegroom was aware at all times of his injury, and provides no foundation for his conclusory assertion that she was aware of his injury. HSA Bridegroom attests she only learned about Mr. Cook's injury when she received his paperwork on January 3, and Mr. Cook's speculation is insufficient to dispute this attestation. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016) (a plaintiff "is not entitled to inferences supported only by speculation or conjecture"); *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) ("inferences relying on mere speculation or conjecture will not suffice" to create a genuine dispute); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Accordingly, because it's undisputed HSA Bridegroom only

became aware of Mr. Cook's injury on January 3 and her only involvement was to approve his paperwork transferring him to the emergency room, no reasonable jury could conclude HSA Bridegroom was personally responsible for denying Mr. Cook constitutionally adequate medical care. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). Summary judgment is warranted in her favor.

For these reasons, the court:

(1) DENIES Mr. Cook's motion for summary judgment (ECF 58);

(2) GRANTS the defendants' motion for summary judgment (ECF 60); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Roy Allen Cook and to close this case.

SO ORDERED.

August 22, 2025                                *s/ Damon R. Leichty*
                                               Judge, United States District Court